UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

GRACIELA CONTRERAS,

    Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, GRACIELA CONTRERAS ("Plaintiff"), through undersigned counsel, files

suit against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, for

damages and alleges:

### PARTIES AND JURISDICTION

1. Plaintiff, GRACIELA CONTRERAS, is a resident and citizen of New York, and is

otherwise sui juris.

2. Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE

(hereinafter "CARNIVAL" or "Defendant"), is a foreign entity incorporated under the laws of

Bermuda with its principal place of business in Miami, Florida.

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §

1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive

of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity

jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction, 28

U.S.C. § 1333.

4.    At all material times, Defendant, personally or through an agent:

    a.  Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this State and/or county;

    b.  Was engaged in substantial activity within this State;

    c.  Operated vessels in the waters of this State;

    d.  Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181, or 48.193;

    e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state;

5.    Defendant was engaged in the business of providing to the public and to Plaintiff in particular, for compensation, vacation cruises onboard its cruise ships; and the Passenger Contract Ticket issued by Defendant requires that suit be brought in this Court against the named Defendant.

6.    The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7.    All conditions precedent to bringing this action have been satisfied, including providing Defendant with timely notice as required by the ticket contract.

8.    At all times material, Plaintiff was a paying passenger lawfully aboard the Vessel.

9.    At all material times, CARNIVAL owned, operated, managed, maintained, controlled, and/or had exclusive custody of the Vessel, and operated the Vessel on navigable waters.

**THE SUBJECT INCIDENT**

10.   On or around June 1, 2025 (the "Incident Date"), the Vessel was docked in Nassau, Bahamas, where passengers, including Plaintiff, were permitted to disembark for a port stop.

11.   It had been raining throughout the day at Nassau, and rain was falling as passengers,

including Plaintiff, were returning to the ship. Due to a sudden severe storm, passengers were briefly held at the gangway before being permitted to board. Plaintiff was among the first passengers to ascend the gangway and enter the ship after the pause.

12.     As Plaintiff re-boarded the vessel and entered the embarkation hall, she slipped and fell on a wet and/or unreasonably slippery floor surface, sustaining severe injuries. Plaintiff felt that the floor was wet with water or other transitory substance, and multiple witnesses stated that the floor was obviously and visibly wet.

13.     The dangerous conditions which caused Plaintiff's incident include, but are not limited to:

  a. The subject flooring was unreasonably slippery when wet.

  b. When passengers re-board the Vessel during or following rain, water is tracked onto the interior floor surfaces of the Vessel near the entry/boarding area from the gangway, from passengers' wet shoes, clothing, and persons, and from the elements, making those interior floor surfaces unreasonably wet and slippery;

  c. CARNIVAL failed to place anti-slip mats, runners, or other slip-resistant materials in the subject area to address the foreseeable accumulation of water during re-boarding in rain.

  d. CARNIVAL failed to place any warning signs, cones, or barriers, or to otherwise warn passengers of the wet and slippery condition of the floor;

  e. CARNIVAL failed to properly account for the weather forecast, which led to passengers standing in the rain waiting to embark while boarding was stopped;

  f. CARNIVAL's employees failed to exercise reasonable care and follow the company policy meant to prevent slip and fall incidents;

  g. The employees overseeing re-embarkation failed to exercise due care or follow company policy in controlling the flow of people;

  h. The lack of adequate and safe boarding procedures.

14.     The weather conditions on the subject day were rainy and stormy; and as such, CARNIVAL should have paused or controlled re-boarding operations, dried the floor, or redirected passengers, as boarding passengers across the wet interior floor at that time was

unreasonably dangerous.

**DEFENDANT'S NOTICE**

15.    CARNIVAL knew or should have known of the dangerous conditions outlined above for reasons that include but are not limited to:

a.  At the time of the Plaintiff's fall, the embarkation hall was full of Carnival employees, including one standing less than 5 ft away from the visibly wet spot.

b.  CARNIVAL stations employees at the gangway location to monitor and assist passengers board the vessel; and had CARNIVAL reasonably performed this undertaking, CARNIVAL knew or should have learned that the flooring in the entry hall was unduly hazardous;

c.  CARNIVAL'S own policies and procedures require crewmembers to inspect and maintain the floors in a clean and dry condition and to place wet floor signs on areas that are or are likely to become wet, such that had CARNIVAL reasonably performed these undertakings, it knew or should have known of the dangerous condition; and

d.  CARNIVAL crew members directed the flow of passengers, including when they were made to wait in the rain, and should have readily discerned the potential for a hazardous situation posed by bringing in large numbers of people after making them wait in a severe rain storm;

e.  At all times during the subject cruise, CARNIVAL's shipboard team and shoreside team monitor the weather/sea conditions at the itinerary stop for each ship, including the subject vessel. Had CARNIVAL adequately performed this undertaking, CARNIVAL knew or should have known that at the time CARNIVAL boarded Plaintiff onto the vessel, the weather conditions would have not only delayed boarding but led to a dangerous condition;

f.  CARNIVAL knew that when passengers re-board the Vessel during or following rain, water is tracked onto the interior floor surfaces near the entry/boarding area, making those surfaces unreasonably wet and slippery.

g.  policies and/or procedures and/or industry standards have been implemented for wet, slippery, and/or hazardous conditions on interior deck surfaces to warn passengers, like Plaintiff, of possible dangers. Relevant industry standards and guidelines regarding the safety of the subject surface include, but are not limited to, prohibitions and/or recommendations against surfaces having a coefficient of friction or slip resistance below .60, such as A137.1 and B101.3 of the American National Standards Institute (ANSI). CARNIVAL was also under a legal duty to comply with mandatory international vessel safety regulations that

are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including Part C, Regulation 13, subpart 1.1 ("safe escape routes shall be provided") and subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles."). CARNIVAL's walkways and boarding areas are escape routes that it must maintain in a safe, clear, clean, and dry condition.

16. Prior to Plaintiff's incident, other CARNIVAL passengers were injured slipping and falling on wet flooring in the same or substantially similar boarding/entry areas of the same or sister vessels, for reasons similar to those that caused Plaintiff's incident here, including:

   a. On May 17, 2018, passenger P.B. was injured when she slipped and fell on a wet, slippery, and/or hazardous flooring surface at or near the gangway entrance/exit area aboard the Carnival Conquest, the same vessel as the subject incident. Case No. 1:19-cv-21732.

   b. On December 11, 2022, passenger L.P. slipped and fell aboard the Carnival Conquest — the same vessel as the subject incident — due to a wet, slippery, and/or transitory substance, in rain-related conditions. Case No. 1:24-cv-20497.

   c. On March 13, 2023, passenger L.S. was injured when she slipped and fell on condensation that had accumulated on the interior floor of the ship at and near the gangway entry area, on Deck 1 of the Carnival Valor, a vessel of the same Conquest class as the Carnival Conquest. Case No. 1:24-cv-20003.

17. Additional evidence that CARNIVAL had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area. CARNIVAL has its "own the spill" policy as well as its "two-minute trainers". CARNIVAL's policies and procedures require crew members to inspect and maintain the floors in a clean and dry condition. CARNIVAL specifically trains its crew members to inspect and maintain the deck areas in a clean and dry condition. CARNIVAL's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured. CARNIVAL also trains and creates procedures that require crew members to place wet floor signs on walkways that become repetitively wet and/or are known to be wet. CARNIVAL created this

procedure for its crew because it knows that without warnings, passengers may not know or perceive that its floors are wet. CARNIVAL also knows that without warnings passengers may not know how slippery its floors are when wet. This shows that CARNIVAL knew or should have known that its slippery wet deck floor walkways are not an open and obvious condition.

## COUNT I – GENERAL NEGLIGENCE AGAINST DEFENDANT

The Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through seventeen (17) as though alleged originally herein.

18.    At all material times, it was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

19.    On or about the Incident Date, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances, through the following acts and/or omissions:

   a. Failure to provide a floor surface with adequate slip resistance in the entry hall/boarding area of the Vessel; and/or

   b. Failure to place rubber mats or other non-slip coverings or substances in or around the subject area to address the foreseeable accumulation of water during re-boarding in rain; and/or

   c. Failure to close off the subject area or redirect passengers to a dry or safer boarding route; and/or

   d. Failure to dry, squeegee, or mop the subject floor surface prior to permitting passengers to re-board during or following rain; and/or

   e. Failure to promulgate and/or enforce adequate policies and/or procedures with regard to preventing the accumulation of water on the floor surface of the entry/boarding area during inclement weather and re-boarding operations; and/or

   f. Failure to adequately test the coefficient of friction and slip resistance of the flooring surface in the subject area;

   g. Failure to address the hazardously wet floors;

h.  Failure to properly monitor weather conditions and adjust boarding procedures accordingly;

i.  Failure to follow its own policies and trainers regarding response to wet floors or potential slip hazards.

20.  The above acts and/or omissions caused and/or contributed to Plaintiff being severely injured because Plaintiff would not have been injured but for the above acts and/or omissions.

21.  At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 15–17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers in the same or substantially similar area. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

22.  As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, GRACIELA CONTRERAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT II – NEGLIGENT FAILURE TO WARN

The Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through seventeen (17) as though alleged originally herein.

23.   At all material times, it was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

24.   At all material times, it was the duty of Defendant to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to Defendant in places where passengers (like Plaintiff) are invited to or may reasonably be expected to visit.

25.   On or about the Incident Date, Defendant and/or its agents, servants, and/or employees breached its duty to warn Plaintiff through the following acts and/or omissions:

   a.   Failure to adequately warn passengers, including Plaintiff, of the wet, unreasonably slippery, and/or dangerous condition of the subject floor surface, through written or orally delivered warnings, appropriate signage, markings, or placement of cones; and/or

   b.   Failure to adequately warn passengers of the risks and/or dangers associated with the wet and slippery condition of the interior floor surface during and following rain-related re-boarding; and/or

   c.   Failure to adequately warn passengers and Plaintiff of other slip-and-fall incidents previously occurring in the same and/or similar entry/boarding areas on the Vessel, her sister ships, and/or other ships in Defendant's fleet; and/or

   d.   Failure to make audible announcements warning passengers of the wet floor conditions during re-boarding.

   e.   Failure to follow its own policies and trainers regarding response to wet floors or potential slip hazards.

26.   The above acts and/or omissions caused and/or contributed to Plaintiff being severely injured because Plaintiff would not have been injured had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiff.

27.   At all material times, Defendant knew of the foregoing conditions causing Plaintiff's

incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 15–17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers in the same or substantially similar area. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

28.     As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, including her lower back, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost wages and the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, GRACIELA CONTRERAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT III – NEGLIGENT FAILURE TO MAINTAIN

The Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through seventeen (17) as though alleged originally herein.

29.     At all material times, it was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

30.     At all material times, it was the duty of Defendant to maintain the Vessel, including

the floor surface in the entry hall/boarding area immediately past the security scanning station, in a reasonably safe condition.

31.    On or about the Incident Date, Defendant and/or its agents, servants, and/or employees breached its duty through the following acts and/or omissions:

  a.  Failure to adequately and regularly monitor and/or inspect the subject area during re-boarding operations, particularly during and following inclement weather; and/or

  b.  Failure to adequately and regularly clean, dry, and/or maintain the subject floor surface in a safe condition during re-boarding; and/or

  c.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that the subject area is adequately cleaned, dried, and/or maintained free of slip-and-fall hazards during re-boarding in rain or inclement weather; and/or

  d.  Failure to adequately and/or regularly maintain a reasonably safe flooring surface in light of the anticipated purpose of the subject area as a high-traffic re-boarding zone; and/or

  e.  Failure to promulgate and/or enforce adequate policies and procedures to inspect, monitor and/or maintain surfaces in the subject area in a reasonably safe condition during foreseeable re-boarding and weather-related conditions.

32.    The above acts and/or omissions caused and/or contributed to Plaintiff being severely injured because Plaintiff's incident would not have occurred but for Defendant's failure to adequately inspect and/or maintain the subject area.

33.    At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through (a) the facts alleged in Paragraphs 15–17, (b) its inspection and monitoring of the subject area prior to this incident, and/or (c) prior incidents causing personal injury to Defendant's passengers in the same or substantially similar area. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

34.     As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, including her lower back, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost wages and the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, GRACIELA CONTRERAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

## COUNT IV – VICARIOUS LIABILITY FOR ACTIVE NEGLIGENCE OF EMPLOYEES (RESPONDEAT SUPERIOR)

The Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through seventeen (17) as though alleged originally herein.

35.     At all times material, the crewmembers aboard the Carnival Conquest were employees of the Defendant, acting within the course and scope of their employment. CARNIVAL is therefore vicariously liable for the active negligence of its crew. CARNIVAL's crew owe passengers a duty to exercise reasonable care for the safety of its passengers by and through its employees onboard its ships. This duty of care includes inspecting and maintaining the ship's interior boarding/entry areas, including the floor surface immediately past the security scanning station, in a reasonably safe condition, and warning passengers of dangerous conditions in those areas.

36.    At all material times, the crewmembers assigned to inspect, maintain, and monitor the entry hall/boarding area of the Vessel during re-boarding operations were subject to the control and/or right to control by CARNIVAL. CARNIVAL operated, controlled, and/or maintained the subject entry/boarding area as well as its shipboard housekeeping, hotel, and safety and security departments. CARNIVAL was responsible for, among other things and without limitation: overseeing the operations of the entry/boarding area; overseeing the crewmembers assigned to inspect and maintain the floor surfaces in the entry/boarding area; and implementing and enforcing CARNIVAL's policies and procedures regarding wet floors and re-boarding operations during inclement weather.

37.    Notwithstanding the foregoing duties, CARNIVAL's crewmembers actively breached their duties through the following acts and/or omissions:

a.   Failing to inspect and dry the floor surface of the entry hall/boarding area prior to and during re-boarding operations while it was raining; and/or

b.   Failing to place wet floor signs, cones, or other warnings in the subject area despite knowing the floor was wet; and/or

c.   Failing to place non-slip mats or other slip-resistant materials in the subject area during re-boarding in rain; and/or

d.   Failing to halt or suspend re-boarding until the wet floor condition in the entry/boarding area was remediated; and/or

e.   Failing to warn passengers, including Plaintiff, of the wet and slippery condition of the floor as they re-boarded the Vessel.

38.    CARNIVAL is vicariously liable and responsible for the foregoing negligent acts and omissions of its crewmembers as set forth above under the doctrine of respondeat superior.

39.    As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, including her lower back, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing

conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost wages and the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, GRACIELA CONTRERAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

### COUNT V – VICARIOUS LIABILITY FOR ACTIVE NEGLIGENCE OF CREWMEMBER OVERSEEING RE-BOARDING PROCESS (RESPONDEAT SUPERIOR)

The Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through seventeen (17) as though alleged originally herein.

40.    At all times material herein, the crewmember(s) stationed at the security scanning station at the entry/boarding area of the Carnival Conquest were employees of CARNIVAL, acting within the course and scope of their employment. Those crewmembers were specifically assigned to and responsible for overseeing and managing the re-boarding of passengers, including Plaintiff, on the Incident Date. In that capacity, those crewmembers owed a duty to exercise reasonable care for the safety of passengers re-boarding the Vessel, including a duty to: observe and address dangerous conditions in the immediate vicinity of their post; safely manage and control the flow of passengers re-boarding through the entry/boarding area; warn passengers of wet and slippery floor conditions; and take all reasonable steps to prevent passengers from being injured in the area they were assigned to supervise.

41.    At all material times, the crewmember(s) stationed at the security scanning station

were subject to the control and/or right to control by CARNIVAL. CARNIVAL assigned those crewmembers to that post, directed their duties, and was responsible for their training and supervision. Those crewmembers were present in the immediate vicinity of the subject area at or around the time of Plaintiff's incident and thus had direct, firsthand knowledge of or the ability to observe the wet and dangerous condition of the floor, as well as the foreseeable risk created by holding passengers at the gangway in heavy rain and then releasing them en masse into the confined interior entry/boarding area.

42.     Notwithstanding the foregoing duties, the crewmember(s) overseeing the re-boarding process actively breached their duties through the following acts and/or omissions:

    a.   Failing to observe and/or address the wet, slippery floor condition in the entry hall area immediately adjacent to and past their station;

    b.   Failing to warn Plaintiff and other passengers of the wet and dangerous floor condition as they passed through the security scanning area;

    c.   Failing to implement a controlled, staggered re-boarding process to prevent a sudden influx of rain-soaked passengers into the confined entry/boarding area with a slippery laminate floor;

    d.   Failing to delay or suspend re-boarding until the floor in the entry/boarding area was rendered safe, including drying the floor and placing non-slip mats or warnings;

    e.   Failing to coordinate with crewmembers managing the gangway to ensure the interior floor was safe before permitting passengers to proceed through the security scanning area;

    f.   Failing to call for assistance to address the wet floor condition or the crowd management situation in the subject area;

    g.   Directing passengers, including Plaintiff, to proceed through the wet and dangerous entry/boarding area without warning or precaution, despite knowing that those passengers had been held in heavy rain at the gangway and would track substantial water onto the interior floor.

43.     CARNIVAL is vicariously liable and responsible for the foregoing negligent acts and omissions of the crewmember(s) overseeing the re-boarding process, including the failure to

safely manage crowd flow during inclement weather re-boarding, under the doctrine of respondeat superior.

44.     As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, including her lower back, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost wages and the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff, GRACIELA CONTRERAS, demands judgment for all damages recoverable under the law against Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, and demands trial by jury; in the alternative, Plaintiff requests an advisory jury under Federal Rule of Civil Procedure 39.

Dated: May 29, 2026

Respectfully submitted,

SHER & VOLK, P.A.
*Attorneys for Plaintiff*
701 Brickell Ave., Ste. 1550
Miami, Florida 33131
Telephone No.: (305) 728-5253
Facsimile No.: (305) 503-6723

By:     */s/ GRIFFIN SHER*
        **GRIFFIN W. SHER** (FBN 1023219)
        gsher@shervolk.com
        **BRANDON P. VOLK** (FBN 1019012)
        bvolk@shervolk.com